RESOURCE DEVELOPMENT CORPO-
RATION et al., Appellants,

v.

The CAMPBELL COUNTY FISCAL
COURT et al., Appellees.

Supreme Court of Kentucky.

June 25, 1976.

Rehearing Denied Dec. 17, 1976.

A. J. Jolly, Fort Thomas, for appellants.

Paul H. Twehues, Jr., Newport, Leonard
L. Kopowski, Cincinnati, Ohio, for appellees.

STERNBERG, Justice.

This is a zoning action in which the Fiscal
Court of Campbell County, Kentucky, de-
nied the application of appellants for a zon-
ing change from agriculture (A–1) to indús-
trial (I–3). The Campbell Circuit Court af-
firmed the action of the fiscal court; thus,
this appeal.

Appellants' application for a zoning
change was submitted to the Northern Ken-
tucky Area Planning Commission (herein-
after referred to as Area Planning Commis-
sion) for study and research (KRS
147A.080) and for a report to the Campbell
County Planning and Zoning Commission
(hereinafter referred to as Planning and
Zoning Commission) (KRS 147A.090). A
public hearing was held by the Area Plan-
ning Commission and a record of the pro-

ceedings is retained in its office. This report, after setting forth facts upon which it relied for its conclusions, recommended that the zoning change be granted, subject to close control and scrutiny by the Planning and Zoning Commission.

On November 19, 1974, the Planning and Zoning Commission held a public evidentiary hearing on the application. Testimony was taken, transcribed, and filed with the commission. On November 24, 1974, after considerable and lengthy discussion and after having made detailed and lengthy findings of fact, the Planning and Zoning Commission agreed:

1. That the map amendment proposed by the applicants is in agreement with the community's comprehensive plan;

2. That the original zoning classification given the property was proper and appropriate, and

3. That the zoning of the property requested by the applicants be changed from agriculture (A–1) to industrial mining (I–3), subject to a restriction that would not permit open pit mining.

The fiscal court did not conduct a trial-type hearing, but on December 16, 1974, after considering the application, the reports and recommendations of the Area Planning Commission, the reports and recommendations of the Planning and Zoning Commission and the record of the proceedings which it held, and numerous letters and written protests which were received by the individual members of the fiscal court, made findings of its own which were contrary to the findings of both the Area Planning Commission and the Planning and Zoning Commission. It denied the application.

The witnesses for the applicants are experts in the field of civil engineering and environmental control. Mr. John Steele, President of the appellant corporation, described the method proposed to be used in carrying out its operation. Its capital investment would be in excess of $30 million. It would furnish employment to between 100 and 150 employees. The only surface mining would be the removal of the clay and overburden in the area of the mine shaft. Most of the mining would be underground. The need for this type of limestone is for use in construction work, in making steel, in water processing and treatment, in purification of sewage disposal plants, in the control of fuelburning pollutants, in the manufacturing of cement, and in the manufacturing of lightweight aggregate. Mr. Ib Jensen, President of Industrial Engineering for the Centennial Engineering Company, of Denver, Colorado, also testified. His testimony demonstrates that the mining of limestone, as proposed by applicants, would have no visible deleterious effect on the area but, on the contrary, would add to the economy. Dr. Sanford Horstman, Assistant Professor of Environmental Health at the University of Cincinnati Medical College, made a study of applicants' plans for the control of air pollution. He told of the emission of dust, the potential for water pollution, and the noise emission from plant operation. He explained in detail the modern and adequate controls which the applicants proposed to use in the operation of their plant, and stated that this operation would be in keeping with all good and proper standards of operation and would not seriously damage the area or anyone living in the immediate vicinity. These were the only persons to testify for appellants.

Three persons testified in opposition to the application. Mr. George Geisen, who has resided in the area for 12 years, objected to applicants' plans. His objections were speculative and based on his experience with other mining in the general vicinity. Mr. John Ebert, President of Camp Sunshine, also testified in opposition. He described Camp Sunshine, which is maintained for the underprivileged youth in the area, and expressed fear for the safety of the youngsters in the camp and under his supervision. Camp Sunshine adjoins the subject properties. Mr. Samuel Martin protested and read an article which appeared in the local newspaper.

In addition to the record of the hearings, the fiscal court members had received many letters and petitions of protest.

On this appeal the appellants present and argue five issues; however, by reason of the disposition that is being made of this action, it is necessary that we discuss only one of them, to-wit:

"Was there substantial evidence before the Fiscal Court to sustain Appellees position and support its order denying Appellants request to place the subject land in a special mining district?"

In appellants' brief it is written:

" * * * An examination of the findings of fact made by the Fiscal Court upon this evidence clearly indicates that the Court acted not upon substantial evidence as is required under Kentucky law, but merely upon the petitions of objecting residents."

In the brief of the Campbell County Fiscal Court, in making reference to the letters and petitions of protest which were received by the members of the fiscal court, it is stated:

" * * * They did not control the action of the fiscal court; they did not deny appellant its right of due process; and they certainly did not make the decision of the fiscal court to refuse the zone change an arbitrary exercise of power."

The statement of policy filed by the Campbell County Fiscal Court with its resolution denying the application states, among other things, as follows:

"The Court also must give weight to the position of the people of the county. Here, the Court has been flooded by a multitude of petitions opposing the change. It should be noted here that the councils of the two communities oppose the change and also the people in the surrounding vicinity almost unanimously oppose the change.

All must realize that the Fiscal Court members are the duly elected representatives of the people and in functioning as such must reflect the sentiment and desires of the general public who reside in the county. The Court therefore must give great weight to the people's position in balancing the scales of justice in this issue and determine that the zone change must be denied."

The resolution of the fiscal court contains, among other things, the following:

"WHEREAS, the members of this Fiscal Court have reviewed the minutes, findings of fact and recommendation of the Planning and Zoning Commission as well as the applicant's transcript and exhibits introduced by the applicant and opponents; and

WHEREAS, a multitude of petitions opposing such zone change have been filed with the members of the Fiscal Court; and

\* \* \* \* \* \*

8. The vast majority (it's almost unanimous) of the property owners and residents of the area, including the two communities, have filed petitions with the Court opposing the requested zone change."

Since the decision of the fiscal court was simply a refusal to rezone, the problem is whether the evidence shows a compelling need for the rezoning sought or clearly demonstrates that the existing zoning classification is no longer appropriate. *City of Louisville v. McDonald*, Ky., 470 S.W.2d 173; *City of Bowling Green v. Hunt*, Ky., 516 S.W.2d 647. However, the evidence must come as a result of a due process hearing. It is pointed out in *City of Louisville v. McDonald*, supra:

"If the zoning commission conducts a trial-type due process hearing and based thereon makes factual findings and a recommendation, the legislative body may follow the commission's recommendation without a hearing or only an argument-type of hearing. The record made before the commission must adequately reflect the elements necessary for judicial review to determine whether the ultimate action was arbitrary. The legislative body may review the record made before the commission and determine from that evidence adjudicative facts which differ

from those found by the commission. Again, in this event, the record made before the commission must reveal the proper elements to be considered on judicial review. The legislative body also may hold its own trial-type hearing and may find as a result thereof different adjudicative facts than those found by the commission. * * * "

In the case at bar, since the legislative body did not conduct a trial-type hearing, it was limited to the evidence produced at the due process trial-type hearing held by the Planning and Zoning Commission. The full proceeding before the Planning and Zoning Commission was submitted to the fiscal court, and it could have acted upon that record or it could have conducted a due process trial-type hearing of its own as described in *City of Louisville v. McDonald*, supra, and reiterated in *Caller v. Ison*, Ky., 508 S.W.2d 776, which it did not do.

In *Fiscal Court of Jefferson County v. Stallings*, Ky., 515 S.W.2d 234, which was a zoning case, the circuit court, on appeal, permitted the filing of additional exhibits and the taking of a deposition. In the determination of the issue the chancellor considered the newly introduced evidence along with other evidence in the record.

On appeal to this court, it is pointed out in the opinion, to-wit:

" * * * The circuit court was not at liberty to consider additional exhibits and evidence in the absence of a claim of fraud or misconduct on the part of the fiscal court or its individual members."

In the case at bar the fiscal court was not at liberty to consider the additional exhibits which took the form of letters and written petitions of protest which it received and which appellants were not afforded the opportunity to rebut.

The judgment is reversed with directions that the fiscal court either consider and determine the application in light of the competent evidence submitted to it as a result of the hearing held by the Planning and Zoning Commission or, in the alternative, hold a due process trial-type hearing of its own.

All concur.